# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 CR 1101 - 2 | DATE | 10/12/2004 |
| CASE TITLE | United States of America vs. August C. Ghilarducci and Ronald J. Richardson | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Objections by Ronald J. Richardson to government's rule 404(b) materials and renewal of request for severance [Doc. No. 116]; Motion by Ronald J. Richardson for a bill of particulars regarding the counts of the indictment charging defendant with tax evasion [Doc. No. 118]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due

(3) ☐ Answer brief to motion due         Reply to answer brief due

(4) ☐ Ruling/Hearing on      set for      at

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on      set for      at

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on      set for      at

(7) ☐ Trial[set for/re-set for] on      at

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to      at

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons set forth in the attached memorandum opinion and order, Richardson's objections to the Government's Rule 404(b) materials [Doc. No. 116-1], which is taken as a motion to exclude these rule 404(b) materials, is DENIED. Richardson's renewed request for severance [Doc. No. 116-2] is DENIED. Richardson's motion for a bill of particulars regarding the counts of the indictment charging defendant with tax evasion [Doc. No. 118] is DENIED.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff | | | |
| X | Notified counsel by telephone. (copies of decision were given to to attorneys by Chambers) | | OCT 14 2004 date docketed | 132 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge | | | |
| | s(tl/te) | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02 CR 1101 |
| v. | ) | |
| AUGUST C. GHILARDUCCI and RONALD | ) | HONORABLE DAVID H. COAR |
| J. RICHARDSON | ) | |
| | ) | |
| Defendants. | ) | |

**DOCKETED**
**OCT 1 4 2004**

## MEMORANDUM OPINION AND ORDER

August C. Ghilarducci ("Ghilarducci") and Ronald J. Richardson ("Richardson") (collectively, "Defendants") have been variously charged in a forty-two count third superseding indictment (hereinafter, "the indictment") with racketeering, wire fraud, money laundering, tax evasion and making false statements on a tax return. The indictment alleges that Defendant Ghilarducci was the president and owner of Westchester Financial Associates, Inc. (hereinafter, "WFA"), an Illinois corporation holding itself out as a financial planning and consulting business. ( See Indictment, Count One, ¶ 1). According to the indictment, Defendant Richardson acted as a business broker, and obtained clients for WFA. (Id. at ¶ 2). The Government alleges that at all times material to the indictment, Richardson did business under the name "Westchester Financial Associates of Georgia." Id. In addition, the Government alleges that the actual purpose of the WFA enterprise was to engage in: (1) wire fraud; (2) money laundering;

-1-

/32

(3) monetary transactions in criminally derived property; (4) interstate transportation of property taken by fraud; and (5) tax-related offenses. Id. at ¶ 4.

Defendant Richardson has filed several pre-trial motions in an attempt to resolve certain evidentiary disputes prior to the October 20, 2004 trial. Specifically, Richardson has filed: (1) an objection to the Government's Rule 404(b) materials; (3) a renewed request for severance of the trial from his co-Defendant, August C. Ghilarducci; and (4) a motion for a bill of particulars regarding the counts of the indictment charging Defendant with tax evasion. For the reasons set forth below, Richardson's objections to the Government's Rule 404(b) materials, which is taken as a motion to exclude these 404(b) materials, is DENIED; Richardson's renewed request for severance is DENIED; and Richardson's motion for a bill of particulars regarding the counts of the indictment charging defendant with tax evasion is DENIED.

## I. Defendant Richardson's Objection to the Government's Rule 404(b) Materials

In his motion, Defendant Richardson notes that the Government has indicated that it intends to introduce testimony regarding Richardson's contact with a person named Dr. John Glavinovich ("Glavinovich") as uncharged misconduct pursuant to Rule 404(b) of the Federal Rules of Evidence ("Rule 404(b)"). Richardson objects to the introduction of this uncharged conduct, as Richardson contends that it does not meet the requirements of Rule 404(b). Consequently, Richardson argues, this testimony should be excluded from trial.

The Government states that on September 2, 2004, it provided Defendants with notice that at trial, the Government intended to introduce evidence of Richardson's financial transactions with Glavinovich in 1992 and 1993. The Government believes that the Glavinovich

transaction was a confirmed funds/leased funds type of transaction, and was similar to the transactions that are the subject of the indictment. The Government contends that the evidence will show that in November 1992, Glavinovich entered into an agreement brokered by Richardson, and the structure of that agreement was virtually identical to the alleged fraudulent transactions charged in the indictment.

Specifically, the Government contends that in Richardson's transactions with Glavinovich, Richardson informed Glavinovich that he represented an investment company by the name of Myco Investment Group ("MIG"). The Government alleges that Richardson advised Glavinovich that for a fee of $150,000, Richardson could arrange for Glavinovich to obtain the rights to prima bank guarantees or letters of credit totaling 500 million dollars. Glavinovich agreed to this transaction. The Government also asserts that Richardson, using the bank guarantees as collateral, advised Glavinovich that Richardson and his associates at MIG could then buy and sell bank instruments in the form of a trading program. According to the Government, Richardson advised Glavinovich that he had completed these types of transactions in the past, with profits that could rise to the millions of dollars. It is based upon these representations, the Government contends, that Glavinovich wired $175,000 to Richardson and others affiliated with MIG. Ultimately, because of delays and problems, the transaction fell through; however, Glavinovich's money, which was being held in escrow, had already been released by the escrow attorney. According to the Government, Richardson convinced Glavinovich to invest two more times: $71,000 in January 1993 and $35,000 in March 1993. All three transactions ultimately fell through, and subsequently, several individuals faced federal indictments for their roles with MIG. The Government believes that Richardson received 16

percent of the fraudulently obtained deposits received from individuals and companies, and subsequently, Richardson was identified by the Government as an unindicted co-conspirator in the scheme.

The Government states that it will present evidence that in these transactions, which occurred from 1993 through 1997, Glavinovich actively sought to have Richardson repay the principal Glavinovich invested with Richardson. According to the Government, after several individuals were indicted and subsequently sentenced for their roles with MIG, Richardson informed Glavinovich that he would repay part of Glavinovich's money. However, the Government contends, Richardson has not repaid the money. Finally, on August 3, 1996, Glavinovich met with Richardson, and Richardson told Glavinovich that Richardson would have $50,000 available within twenty days. Subsequently, on August 20, 1996, Richardson received a letter from Ghilarducci representing that Richardson was to be paid $92,093.75 for his services related to COF and railroad bond transactions for WFA. The Government argues that Richardson's interactions with Glavinovich show that as Richardson and Ghilarducci were setting up WFA and beginning to the conduct the business that is the subject of the indictment, Richardson was receiving frequent correspondence from another investor about Richardson's alleged activities in a similar scheme, in that investor's attempt to recover his losses from the first alleged scheme. The Government believes that any attempt by Richardson to repay Glavinovich would have been with funds received from the WFA transactions.

### B. *Is This Evidence "Inextricably Intertwined" With the Charged Offenses?*

The Government contends that the evidence that it seeks to admit is directly related to, and consequently, "inextricably intertwined," with the charged offense. The Seventh Circuit "has

a well-established line of precedent which allows evidence of uncharged acts to be introduced if the evidence is 'intricately related' to the acts charged in the indictment." United States v. Spagni, 60 F.3d 313, 316 (7th Cir. 1995) (citing United States v. Ramirez, 45 F.3d 1096, 1102 (7th Cir. 1995)). Pursuant to the "inextricably related" doctrine, "evidence of uncharged criminal activity that is found to be 'intricately related to the facts of the case' is deemed relevant and admissible, provided that it satisfies the balancing test of Rule 403.'" United States v. Gibson, 170 F.3d 673, 680 (7th Cir. 1999) (citing United States v. Ramirez, 45 F.3d 1096, 1102-03; United States v. Hargrove, 929 F.3d 316, 320 (7th Cir. 1991)). "Under the "inextricably related" standard, the admissibility of evidence turns on":

> [W]hether the evidence is properly admitted to provide the jury with a "complete story of the crime [on] trial..." whether its absence would create a "chronological or conceptual void' in the story of the crime...or whether it is "so blended or connected" that it incidentally involves, explains the circumstances or tends to prove any elements of, the charged crime.

Gibson, 170 F.3d at 681 (internal citations omitted). Consequently, evidence deemed "inextricably related" must arise from the same transaction or transactions as the charged crimes. Id.

The Government contends that the proffered evidence, which concerns Richardson's transactions with Glavinovich, is highly instructive to the jury's understanding of the chronology and circumstances surrounding the charged crimes. The Government notes that the Glavinovich transactions took place between November 1992 and March 1993. However, the Government contends, as late as October 1997, Glavinovich was corresponding with Richardson in an attempt to recoup the principal he lost to the scheme in which Richardson was involved. The

Government notes that on August 3, 1996, Glavinovich met with Richardson, and Richardson told Glavinovich that Richardson would have $50,000 available within 20 days. On August 20, 1996, Richardson received a letter from Ghilarducci, representing that Richardson was to be paid $92,093.75 for his services related to COF and railroad bond transactions for WFA. According to the Government, it appears that Richardson may have intended to pay Glavinovich from money received from WFA in 1996. As such, the Government contends, the Glavinovich transaction is inextricably intertwined with the charged WFA transactions.

The Court finds that Richardson's alleged transactions with Glavinovich are inextricably related to the charges set forth in the indictment. Specifically, Glavinovich's attempt in 1997 to recoup money lost in an alleged racketeering scheme shows that the chronology of the interactions between Richardson and Glavinovich are intertwined with the allegations that comprise the indictment against Richardson. In addition, this evidence is instructive on whether Richardson may have engaged in the alleged WFA transactions to pay back Glavinovich, a bondholder who contended that his investment was worthless. This is particularly relevant given certain allegations in the indictment. Specifically, in paragraph 25 of Count One of the indictment, the Government alleges that part of the scheme was that defendant Ghilarducci used proceeds obtained from selling COF letters to repay some railroad bondholders who had complained about the money lost on their allegedly worthless investment. Consequently, Richardson's transactions with Glavinovich are "inextricably related" with the allegations as set forth in the indictment.

In addition, because the Court has determined that this evidence is inextricably related to the charges set forth in the indictment, the Court must ensure that the evidence satisfies the

balancing test of Fed. R. Evid. 403. See Spacni, 60 F.3d at 316 (internal citations omitted). In pertinent part, Fed. R. Evid. 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by unfair prejudice..." Evidence that Richardson handled Glavinovich's investment funds in a similar manner as alleged in the indictment is highly probative evidence, especially if Richardson attempted to repay Glavinovich with funds obtained from the alleged racketeering scheme as set forth in the indictment. This evidence is highly relevant and probative, and that probative value outweighs any purported prejudicial impact this evidence may have on Richardson. Consequently, evidence of Glavinovich's interactions with Richardson is admitted as inextricably related to the allegations set forth.[1]

---

[1] Because the Court has determined that this evidence is admissible as "inextricably related" to the allegations as set forth, it need not address whether the evidence is admissible pursuant to Fed. R. Evid. 404(b). ("Evidence concerning the unfolding of events that led to an indictment, or other circumstances surrounding the crime, is not evidence of 'other acts' within the meaning of Fed. R. Evid. 404(b).") United States v. Akinrinade, 61 F.3d 1279, 1286 (7th Cir. 1995 (citing United States v. Zarnes, 33 F.3d 1454, 1469 (7th Cir. 1994)). Assuming, *arguendo*, however, that evidence of Richardson's interactions with Glavinovich was not admissible pursuant to the "inextricably related" doctrine, the Court would still find this evidence admissible pursuant to Fed. R. Evid. 404(b). Rule 404(b), in relevant part, provides:
> Evidence of other crimes, wrongs, or acts is admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident...

One of the crimes that Richardson has been charged with is mail fraud, which is a specific intent crime. See United States v. Feldman, 711 F.2d 758, 765 (7th Cir. 1995). The Seventh Circuit has noted that with specific intent crimes, intent is an, "essential and necessary element to be proven, and thus necessarily becomes a matter in issue." United States v. Harrod, 856 F.2d 996,1000 (7th Cir. 1998) (internal citations omitted). In addition, in order to be admissible pursuant to Fed. R. Evid. 404(b), the evidence must past a four part test. The evidence must: (1) be directed towards establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) show that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) be sufficient to support a jury finding that the defendant committed the similar act; and (4) have a probative value which is

## II. Richardson's Renewal for a Request for Severance

On May 5, 2004, Defendant Richardson moved for severance of the Defendants, or in the alternative, severance of the counts in the indictment. At a June 16, 2004 hearing, this Court denied Richardson's motion. Richardson has renewed his motion for severance of the trial, as he notes that the Government has indicated that it intends to introduce a great deal of information regarding uncharged conduct allegedly committed by co-Defendant Ghilarducci. Richardson contends that this information will unfairly prejudice him. Further, Richardson contends that a jury instruction at the time of the introduction of such evidence stating that the evidence only pertains to Ghilarducci will not cure the prejudice, yet will highlight the evidence, thereby increasing the prejudicial effect upon both Defendants.

### A. Is Joinder Proper Pursuant to Federal Rule of Criminal Procedure 8(b)?

Joinder of defendants is governed by Federal Rule of Criminal Procedure 8(b) (hereinafter "Rule 8(b)"). Rule 8(b) provides that:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The

---

not substantially outweighed by the danger of unfair prejudice. United States v. Hernandez, 84 F.3d 931, 935 (7th Cir. 1996). The evidence in this case passes the four part test. The evidence of Richardson's interactions with Glavinovich goes not to propensity, but to intent to defraud, the motive for allegedly conducting subsequent fraudulent transactions, his knowledge of the outcome of these transactions, and his lack of mistake. In addition, Richardson's transactions with Glavinovich are similar enough to the allegations in the indictment, as well as close enough in time to be deemed as relevant. Further, the Government contends that it will provide direct eyewitnesses testimony and bank records to support the transactions that occurred between Richardson and Glavinovich. Finally, this evidence is highly probative, and any purported prejudice is outweighed by the probative value of the evidence. Consequently, even if this evidence was not admissible pursuant to "inextricably related" doctrine, it would be admissible pursuant to 404(b).

> defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

The Seventh Circuit has noted that proper joinder "depends on the meaning of 'same series of acts or transactions.'" United States v. Todosijevic, 161 F.3d 479, 484 (7th Cir. 1998) (quoting United States v. Velasquez, 772 F.2d 1348, 1353 (7th Cir. 1995)) (noting that, "[t]he usual meaning is acts or transactions that are pursuant to a common plan or common scheme." Id.) By looking at the indictment, it is clear that the indictment centers around an overarching alleged racketeering scheme, where every count of the indictment is closely linked to the alleged racketeering activity. For example, paragraph 5 of Count One of the indictment enumerates the respective roles of the Defendants in the alleged racketeering scheme. Paragraph 5(a) states:

> Defendant August C. Ghilarducci was the president and owner of WFA. He oversaw and directed the operation of WFA, including, among other things, determining the prices charged to WFA clients, negotiating the terms of WFA transactions and deciding how WFA proceeds would be split with defendant Richardson and other associates.

In addition, Paragraph 5 (b) states:

> Defendant Ronald J. Richardson was at different times material to this indictment either an employee or an independent contractor of WFA. Under the direction of, and in coordination with defendant Ghilarducci, defendant Richardson, among other things, obtained clients for WFA, prepared the paper work for many WFA transactions, and provided prospective WFA clients with information and explanations concerning WFA-related financial transactions.

These paragraphs clearly show that although Richardson and Ghilarducci had different roles in the alleged racketeering scheme, it was the same series of transactions that comprise the counts in the indictment. Further, as Rule 8(b) states, it is not necessary for both Defendants to be charged in every count in the indictment. Consequently, joinder is proper pursuant to Rule 8(b).

### B. Should a Severance be Granted Pursuant to Federal Rule of Criminal Procedure 14?

Because joinder is proper pursuant to Rule 8(b), this Court's authority to sever the Defendants is governed entirely by Fed. R. Crim. P. 14 (hereinafter "Rule 14"). Rule 14 gives this Court discretion to grant a severance of defendants "[i]f it appears that a defendant...is prejudiced by joinder...for trial together." United States v. Mohammad, 53 F.3d 1426, 1431 (7th Cir. 1995) A defendant must establish that a joint trial will result in actual prejudice. Id. "Actual prejudice means that the defendant could not have a fair trial without severance, 'not merely that a separate trial would offer him a better chance at acquittal.'" Id (internal citations omitted)).

When the joinder of defendants is proper pursuant to Rule 8(b), "a joint trial is 'presumptively appropriate.'" Mohammad, 53 F.3d at 1432 (citing United States v. Chapman, 954 F.2d 1352, 1359 (7th Cir. 1992)). This is because a joint trial "more efficiently considers the roles of those indicted together and accused of a joint scheme." Mohammad, 534 F.3d at 1432 (internal citations omitted). A request for severance should be granted, "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." Id. (citing Zafiro v. United States, 506 U.S. 534, 539 (1993)). Further, the Seventh Circuit has noted that the risk of prejudice can be cured by measures such as proper limiting instructions to the jury. Mohammad, 53 F.3d at 1432.

Richardson has failed to present any evidence that would cause the Court to reconsider its June 16, 2004 ruling, which held that a joint trial will not prejudice either Defendants' rights to a fair trial. Rather, in the circumstances of this case, a joint trial will assist the jury in determining

the respective roles of each Defendant in the alleged racketeering scheme. In addition, Richardson has failed to show how a joint trial will prevent the jury from making a reliable judgment about guilt or innocence as to each Defendant. Furthermore, Richardson has not made a showing as to how a limiting instruction will highlight, rather than cure, any prejudice either Defendant may face because of a joint trial. Consequently, this Court has determined that neither Defendants' rights will be compromised during a joint trial. Consequently, Richardson's renewed motion to sever is denied.

### III. Motion for Bill of Particulars Regarding Counts of the Indictment Charging Defendant Richardson With Tax Evasion

When the Government obtained a third superceding indictment against Defendant Richardson, it added four additional counts (Counts Thirty-Nine through Forty-two), alleging tax evasion pursuant to 26 U.S.C. § 7201. These four counts concern Richardson's tax returns for the tax years 1997, 1998, 1999 and 2000. Richardson notes that each count states that Richardson willfully attempted to evade taxes he owed for each year by taking "several specific acts." In addition, Richardson notes that each count then states in paragraph (a) that the reported taxable income and the tax due and owing were a certain amount, but that Richardson had additional income and owed additional taxes. Further, Richardson notes that the approximate amount of unreported additional income is unstated, and the identity of the specific items which are unreported is not set forth. Richardson contends that given that these counts have been filed shortly before trial, and that the counts pertain to tax years beginning over seven years ago, he is in need of specific information to prepare for trial. The Defendant requests that the Court order

-11-

the Government to file a bill of particulars, which specifies the exact figures for the omitted income, and provides the Government's criminal tax computations for each of the tax years in the indictment.

### 4. *Standard for Issuing a Bill of Particulars*

The Court's power to order the Government to file a bill of particulars is governed by Fed. R. Crim. P. 7(f) (hereinafter "Rule 7(f)"), which states:

> The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 10 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

A court may find that it is necessary to order a bill of particulars if the indictment fails to provide sufficient notice of the charges in order to adequately allow the defendant to prepare for trial. United States v. Vasquez-Ruiz, 136 F.Supp.2d 941, 942 (N.D. Ill. 2001) (citing United States v. Kendall, 665 F.2d 126, 134 (7th Cir. 1981)). "The test is whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial." United States v. Roya, 574 F.2d 386, 391 (7th Cir. 1978) (internal citations omitted). An indictment satisfies this standard if it sets forth the elements of each offense charged, cites the statutes that are violated, and the time and place of the defendant's conduct that allegedly violated the statute. Id. However, "a defendant is not entitled to know all the evidence the government intends to produce, but only the theory of the government's case." Kendall, 655 F.2d at 135 (internal citations omitted). In deciding whether to grant a defendant's request for a bill of particulars, a court can consider such factors as the: (1) complexity of the charges; (2) clarity of the indictment; and (3) degree of discovery available to the defense absent a bill of particulars. Vasquez-Ruiz, 136 F. Supp.2d at 943 (internal citations omitted).

This Court finds that the four tax evasion counts, as well as the indictment, adequately apprise Richardson of the events that comprise the tax evasion charges. As the Government correctly notes, the indictment provides extensive detail about Richardson's alleged involvement with the WFA, and those details constitute the foundation of the tax evasion charges. Further, each count of the indictment sets forth the specific acts that comprise the Government's tax evasion allegations. For example, Count Thirty-Nine, Paragraph 10 of the indictment states:

> 10. From on or about January 1, 1997 through on or about October 19, 1998, in the Northern District of Illinois, Eastern Division, and elsewhere, Ronald J. Richardson, defendant herein, who during the calendar year was married, willfully attempted to evade and defeat income tax due and owing by him and his wife to the United States for the 1997 calendar year by the following acts, among others:
> (a) on or about October 19, 1998, defendant Richardson prepared and caused to be prepared, and filed and caused to be filed a false and fraudulent United States Individual Income Tax Return, which was filed with the Internal Revenue Service on behalf of himself and his wife, wherein it was stated that the defendant and his wife did not have an interest in or a signature or other authority over a financial account in a foreign country and that their joint taxable income for that calendar year was the sum of $638,178 and that the amount of tax due and owing thereon was the sum of $253,690; whereas, the defendant then and there well knew, he and his wife did have an interest in, and signature or other authority over financial accounts in a foreign country; their joint taxable income for that calendar year was substantially in excess of $638,178, and he and his wife owed additional tax to the United States in an amount of at least $84,000 beyond what he and his wife reported that they owed on their tax return.

Subsequently, Count Thirty-Nine, paragraph 10 provides further details of the actions allegedly taken by Richardson in furtherance of his tax evasion scheme. For example, subsection (e) of paragraph 10 states, "on or about February 24, 1997, defendant Richardson, acting in concert with August C. Ghilarducci, wired and caused to be wired from the Northern District of Illinois to the Westpac Banking Corporation in Australia WFA proceeds in the approximate amount of

$150,000." In addition to Count Thirty-Nine, Counts Forty, Forty-One and Forty-Two set forth specific acts constituting the tax evasion allegations. Count 39 sets forth eleven specific acts. Count 40 sets forth four specific acts. Count 41 sets forth six specific acts. Finally, Count 42 sets forth four specific acts. Consequently, the Court finds that the indictment provides Richardson with specific details about the acts constituting the alleged tax evasion, including the specific amounts of income at issue. In addition, the Court finds that the Government's agreement to provide Richardson with the draft tax schedules and calculations for each charged tax year prior to trial further obviates any need for a bill of particulars. Consequently, Richardson's motion for a bill of particulars is DENIED.

## CONCLUSION

For the foregoing reasons, Richardson's objections to the Government's Rule 404(b) materials, which is taken as a motion to exclude these 404(b) materials, is DENIED; Richardson's renewed request for severance is DENIED; Richardson's motion for a bill of particulars regarding the counts of the indictment charging defendant with tax evasion is DENIED.

Enter:

_____
David H. Coar
United States District Judge

Dated: October 12, 2004